UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| ANGELIQUE LORRAINE GRANDIZIO ) | Case No. 10-12763-SSM |
| ) | Chapter 13 |
| Debtor ) | |

**MEMORANDUM OPINION**

The chapter 13 trustee, Thomas P. Gorman, has objected on disposable income grounds to confirmation of the plan filed by the debtor on April 22, 2010. The debtor, whose household income of $21,783 per month greatly exceeds the state-wide median for a family of the same size, has taken a "means test" deduction not only of $2,418 per month for on-going mortgage payments on her former residence which she is surrendering, but an additional $236 per month as the amount necessary to cure the pre-petition arrears on the two mortgages against the property. Based on the resulting computation of disposable income, she proposes to pay the trustee $164.63 per month, for an estimated dividend to unsecured creditors of 5 cents on the dollar.

A hearing was held on June 23, 2010, at which the debtor appeared with her attorney of record and testified in support of confirmation. The legal issue addressed at the hearing was whether, in light of the Supreme Court's recent decision in *Hamilton v. Lanning*, 560 U.S. — (2010), the determination of the debtor's projected disposable income should take into account that she and her husband will not be making the mortgage payments on the property being surrendered. The court, however, need not reach that particular issue to resolve the present

1

objection, since—whatever a debtor's right to claim a means test deduction for payments contractually due on her secured debt during the 60 month period after the filing of the petition— the additional deduction for payments necessary to cure prepetition defaults cannot be claimed if the debtor is not retaining the property.

## Background

Angelique Lorraine Grandizio ("the debtor") is an art director earning $107,276 per year. She filed a voluntary petition in this court on April 8, 2010, for adjustment of her debts under chapter 13 of the Bankruptcy Code. Her husband is a program manager with a government agency and earns $168,626 a year. They have two children, one an infant. On her schedules, the debtor listed $157,823 in unsecured debt; combined monthly income, after payroll deductions, of $12,060; and monthly living expenses of $11,895.79, leaving $165 with which to fund a repayment plan. On her Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form 22C or "means test form") she reported Current Monthly Income ("CMI") of $21,783 and annualized CMI of $230,201, which exceeds the median income ($85,633) for a household size 4 in Virginia. From CMI, the debtor claimed deductions of $19,019 to arrive at a calculated "disposable income" under the means test of $165. Relevant to the present objections, she claimed deductions of $2,418 on Line 47 as the average monthly payment scheduled as contractually due to secured creditors with respect to two mortgages against her "*Former* residence . . . 4270 Wheeled Caisson Square, Fairfax, Virginia" (emphasis added). Additionally, on Line 48, she claimed deductions of $235.87 as 1/60th of the amount, in addition to the amount listed on Line 47, "to maintain possession of the property."

2

The debtor's plan, filed on April 22, 2010, proposes to pay the chapter 13 trustee $164.63 per month for 60 months, for total plan funding of $9,878.  The Wheeled Caisson Square townhouse would be surrendered, as would a motorcycle.  The projected dividend on unsecured debts is 5 cents on the dollar.  The debtor testified at the hearing that she had pared her budget as much as possible and would be unable to make plan payments in an amount greater than proposed in the plan.

Discussion

A.

Chapter 13 allows an individual debtor with regular income whose debts do not exceed specified limits to restructure and repay debts under court supervision and court protection.  Although priority debts must be paid in full, as must secured debts (with interest) if the debtor proposes to keep the collateral, general unsecured debts may be paid at less than 100 cents on the dollar provided  the plan (1) is proposed in good faith, (2) the case has been filed in good faith, (3) the creditors receive payments having a present value at least equal to what they would have received in a chapter 7 case, and (4) the debtor applies his or her "projected disposable income" for the "applicable commitment period" to the payment of unsecured debts.  § 1325(a)(3), (a)(4), (a)(7), (b)(1), Bankruptcy Code.

B.

For debtors whose household income exceeds the state-wide median for a household of the same size, the applicable commitment period is 60 months, unless claims can be paid in full in a shorter period. *Id.* § 1325(b)(4). "Disposable income" is calculated by first determining "current monthly income"—defined as the average of the income received in the six calendar

3

months *prior* to the filing of the petition—and then subtracting "amounts necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor" as well as certain charitable contributions. *Id.* § 1325(b)(2).  For debtors whose household income exceeds the state-wide median, the "amounts necessary to be expended" are determined using the so-called "means test" established by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to determine a debtor's eligibility to proceed under chapter 7.  *Id.* § 1325(b)(3).  The means test allows fixed deductions from CMI for food, housing, transportation and certain other expenses specified in published Internal Revenue Service collection standards.  *Id.* § 707(b)(2)(A)(ii)(I).  Additional deductions are allowed for various other categories of expenses based on amounts actually spent. *Id.* § 707(b)(2)(A)(ii)(II)-(V), (iii), (iv).  Relevant to the present objection, a deduction is allowed for

> the sum of—
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
> divided by 60.

*Id.* § 707(b)(2)(A)(iii).

Although there is a split of authority across the country, this court has allowed a deduction under the means test of the payments "contractually due . . . in each month of the 60 months following the date of the petition" on debt secured by collateral that the debtor intends to surrender.  *In re Degrosseilliers*, No. 08-10942-SSM, 2008 WL 2725808 *3 & n.6 (Bankr. E.D. Va., July 11, 2008) (collecting cases and so holding).  In *Degrosseilliers*, however, the court

Case 10-12763-SSM    Doc 20    Filed 06/28/10    Entered 06/28/10 16:31:19    Desc Main
Document      Page 5 of 8

specifically left open the issue of whether the additional deduction for payment to cure arrears could be claimed in the surrender contest, noting that a "strong argument" could be made that it would not. *Id.*

Whether the opinions allowing the deduction of the payments "contractually due" even when the debtor proposes to surrender the collateral remain good law following the Supreme Court's recent opinion in *Hamilton v. Lanning*, 560 U.S. — (2010) is an interesting question. *Lanning* addressed the issue of how disposable income is "projected" for the purpose of § 1325(b)(1). Although the Bankruptcy Code defines "disposable income" both for above-median and below-median income debtors, it contains no definition for "*projected* disposable income," and the issue in *Lanning* was whether disposable income is "projected" simply by multiplying disposable income times 60 months (the so-called "mechanical approach") or whether "projected" implied a so-called "forward-looking approach." The Court in *Lanning* adopted the latter view and held that in determining a chapter 13 debtor's projected disposable income, the court may take into account changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.

In the present case, there is no mystery: it is known that the debtor will not be making the contractual payments on the two mortgages against the Wheeled Caisson Square property, from which she had, indeed, already moved before filing her petition. Accordingly, a compelling argument can be made that in projecting the debtor's disposable income, the court should adjust the calculation to eliminate the payments the debtor will no longer be making on the two mortgages.

C.

Be that as it may, the court need not reach that issue to resolve the present objection, because the court concludes that a debtor cannot in any event take a deduction for the amounts "necessary to retain" the collateral if the debtor intends to surrender it. Although there is one reported opinion allowing such a deduction, *In re Goble*, 401 B.R. 261 (Bankr. S.D. Ohio 2009), such a result appears at odds not only with the plain language of the statute but with the handful of other opinions that have addressed the provision. As noted, the deduction is allowed for payments that would be necessary "to maintain possession" of the "debtor's primary residence, motor vehicle, or other property *necessary for the support of the debtor and the debtor's dependents.*" § 707(b)(2)(A)(iii)(II), Bankruptcy Code (emphasis added). By definition, property that a debtor intends to surrender cannot be "necessary" for her support, and her family's. *See In re Marchionna*, 393 B.R. 512 (Bankr. N.D. Ohio 2008) (holding that payments to cure arrearages on principal residence may not be deducted on Form B22 when the debtor intends to surrender the property); *In re Burden*, 380 B.R. 194, 201 (Bankr. W.D. Mo. 2007) (in dicta presuming that debtors who intend to surrender property may not deduct on their means test form expenses for payment of prepetition arrearages). Several opinions, although not directly addressing the issue, assume the non-deductability of cure payments as permitting, by negative inference, the deduction of the payments "contractually due" even if the debtor proposes to surrender the property. *In re Singletary*, 354 B.R. 455, 471 (Bankr. S.D. Tex. 2006); *In re Nockerts*, 357 B.R. 497, 503 (Bankr. E.D. Wis. 2006); *In re Walker*, 2006 WL 1314125 *4 (Bankr. N.D. Ga. 2006). Commentators likewise appear to agree that the plain language of the statute requires that the debtor maintain possession of the property in order to take the deduction

for cure payments. Jay Cristol & Cheryl Kaplan, *11 U.S.C. § 707(b)(2)(A)(iii): Does it Mean What it Says and Say What it Means?*, 19 U.FLA.J.L. & PUB.POL'Y 1, n.41 (stating that deduction for arrearage payment are limited to property that the debtor intends to keep) *citing* Marianne B. Culhane and Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 AM.BANKR.INST.L.REV. 655, 676 (2005).

In this case, moreover, the Wheeled Caisson Square property was not even the debtor's "primary residence" when she filed the petition, which lists an altogether different street address as her residence, with the schedules consistently referring to the Wheeled Caisson Square townhouse as her "*former* residence." The Wheeled Caisson Square townhouse not being either the debtor's primary residence nor otherwise "necessary" for her and her family's support, she is simply not entitled to a deduction for the amount necessary for her to cure the arrears on the mortgage. As a result, the debtor's properly-calculated monthly disposable income under the means test is at a very minimum $236 higher than the $165 she has calculated, which is to say at least $401.

As this court noted in *Desgrosseilliers*, what the projected disposable income test fixes is not the minimum *plan* payment, but rather the minimum amount that must be applied to the payment of *unsecured claims*. *Desgrosseilliers*, 2008 WL 2725808 at *3. Thus, in order to satisfy the test, the payment into the plan must be sufficient, after deduction of the trustee's commission (which is already accounted for in the means test computation), to pay at least $401 per month to the unsecured creditors. Since the present plan does not do so, the trustee's objection will be sustained.

A separate order will be entered denying confirmation with leave to file a modified plan.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

Angelique Lorraine Grandizio
PO Box 10712
Mc Lean, VA 22102
Debtor

Tori D. Gasmalla, Esquire
5252 Cherokee Avenue
Suite 306
Alexandria, VA 22312
Counsel for the debtor

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 trustee